IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROBYN STEVENS, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CIVIL ACTION NO. 1:18-cv-350-KD-B |
| ) | |
| MOBILE COUNTY BOARD OF ) | |
| SCHOOL COMMISSIONERS ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment and Brief in Support of Its Motion for Summary Judgment (Doc. 29), Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgement (Doc. 32), and Defendant's Reply Brief (Doc. 35). For the reasons herein, the Defendant's motion for summary judgment is **DENIED**.

**I.    Findings of Fact**[1]

Robyn Boyd Stevens (Stevens) worked as a non-tenured Social Studies teacher at Calloway-Smith middle school for the 2015-2016 school term. (Doc. 29 at 3; Doc. 33-2, Aff. Stevens at 1). Stevens was non-renewed on May 25, 2016 because Calloway-Smith lost two teaching units. (Doc. 32-15, P. Ex. 16; Doc. 32-27, P. Ex. 37; Doc. 33-10, Depo. Stevens at 2; Doc. 33-4, Depo. Bryan Hack at 3; Doc. 33-5, Depo. Dorothy Walton at 16-17). Non-renewal was customary for non-tenured teachers. (Doc. 33-4, Depo. Hack at 2; Doc. 33-5, Depo. Walton at 17). Stevens

---

[1] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

1

maintained her qualifications and certification to teach grades 4-12 in the state of Alabama. (Doc. 33-2, Aff. Stevens at 1).

When Stevens was notified of her non-renewal, Stevens contends her inactive status was entered into the payroll system and NEXGEN; she also asserts Human Resources processed this change, updating her employment status to 'inactive'. (Doc. 32-27, P. Ex. 37; Doc. 33-6, Depo. Gretchen Lang at 12-14; Doc. 33-4, Depo. Hack at 3-4; Doc. 33-8, Depo. Mavis Hayes at 3-5).[2] Further, the Board utilizes a system of checks and balances to ensure inactive employees are flagged as inactive. (Doc. 33-6, Depo. Lang at 5-6; Doc. 33-8, Depo. M. Hayes at 3-5). The NEXGEN system typically shows an employee's separation date when the employee is non-renewed. (Doc. 33-6, Depo. Lang at 5-6; Doc. 33-8, Depo. M. Hayes at 3-5).

On July 12, 2016, the Calloway-Smith Assistant Principal Ronald Horner (Horner) contacted Stevens to notify her she "would be rehired for the upcoming school year and to give her a schedule of when she could come to the school to prepare her classroom." (Doc. 33-10, Depo. Stevens at 5-6; Doc. 33-3, Aff. Horner 1).[3] There is a dispute about when the unit that Stevens eventually occupied became available. (Doc. 33-3, Aff. Horner at 1 (noting his task to contact teachers who had been hired and assigned approved units for the upcoming 2016-2017 school year in July 2016); compare with Doc. 33-9, Depo. Nina Hayes at 23-26; and Doc. 30-6, Aff. Walton at 3 (each stating the unit at issue became available at the end of August 2016)).

On July 13, 2016, Horner sent an email to Calloway-Smith staff for the 2016-2017 school term, with information about deadlines to have classrooms ready and information about a

---

[2] But see Doc. 33-5, Depo. Walton at 23, 24, 27, 30 (alleging Stevens' employment status was never changed to reflect her nonrenewed status).
[3] See Doc. 33-5, Depo. Walton at 15 (stating she authorized assistant principals to call renewed teachers in July 2016); compare with Doc. 33-5, Depo. Walton at 20 (stating Stevens did not have a position at the start of school).

2

meeting scheduled for August 8, 2016. (Doc. 32-16, P. Ex. 20).[4] The email stated in relevant parts, "Your classroom should be completed no later than July 29, 2016…" (Id.). Stevens arranged with Horner after receiving this email to have him set up her classroom for her while she was out. (Doc. 33-3, Aff. Horner at 2; Doc. 33-10, Depo. Stevens at 7).

On July 26, 2016, Stevens requested a 21-day maternity leave to run from August 6, 2016 through September 7, 2016. (Doc. 32-8, P. Ex. 7; Doc. 32-29, P. Ex. 40 (confirming receipt of Stevens' leave application). Stevens requested a substitute teacher to cover her absence. (Doc. 32-8, P. Ex. 7). George Smith (Smith), the Employee Relations Supervisor, approved her leave request on September 16, 2016. (Doc. 33-4, Depo. Hack at 15, 16; Doc. 33-10, Depo. Stevens at 14-16).

Layla Clark-Jackson (Clark) accepted a position at Calloway-Smith on July 25, 2016, as a 7th grade Social Studies teacher for the 'Green' section. (Doc. 32-3, P. Ex. 1; Doc. 33-7, Depo. Clark at 5-10; Doc. 33-4, Depo. Hack at 31; Doc. 33-5, Depo. Walton at 18-19). Stevens was re-hired for the other Social Studies unit—the Yellow unit.[5] (Doc. 33-5, Depo. Walton at 18; Doc. 33-7, Depo. Clark at 8-10[6]).

---

[4] The Board does not dispute Stevens received this email but Walton notes this was the result of an error in the system—that Stevens had not properly been removed from the system when non-renewed. (Doc. 33-5, Depo. Walton at 23). Walton says she did instruct Assistant Principals to notify active teachers about the breakfast meeting. (Id. at 22). She explains that she did not specify the means of communication or participate in the communication otherwisr. (Id.). She says, " As stated before, I don't know what [the assistant principals'] means was, this is my first time seeing this. I don't know what their means were of how to contact the teachers. I did not instruct them to call any non-renewed teachers. My instructions were for them to contact teachers to let them know where our breakfast was going to be held." (Id.). Walton then admits that because Mr. Horner was a brand new assistant principal, he would not have known which teachers were coming back and who were not as far as knowing who to contact. (Id.).

[5] Walton admits Stevens taught the other Social Studies unit but limits her statement saying Stevens did teach the other unit "[w]hen she was there." (Doc. 33-5, Depo. Walton at 55).

[6] Clark explains she was told a teacher on maternity leave would be teaching the other social studies section and that she believed that person to be Stevens. Clark states her beliefs were confirmed when Stevens returned to teach the other section. (Doc. 33-7, Depo. Clark at 8-9).

3

On August 3, 2016, Stevens was issued an assignment card by Nina Hayes (N. Hayes), Personnel Administrator. (Doc. 32-10, P. Ex. 9; but see Doc. 32-11, P. Ex. 10 (reflecting a September 7, 2016 start date)). Assignment cards are created and given to HR in order to enter employees into the NEXGEN system for active employees. (Doc. 33-8, Depo. M. Hayes at 2-8; Doc. 33-11, Depo. Theda Rhodes 7-8). Assignment cards indicate an employee can be rehired. (Doc. 33-4, Depo. Hack at 13). The Personnel Administrator typically completes the assignment card after speaking with the principal and the employee to ensure the employee can return to the school. (Id.).

The Board approved Stevens at the September 7, 2016 Board meeting at which Stevens' position was listed as a vacancy. (Doc. 33-4, Depo. Hack at 16-17; Doc. 32-26, P. Ex. 36; Doc. 32-28, P. Ex. 39). Stevens was submitted for Board review again October 28, 2016. (Doc. 32-30, P. Ex. 42). It is possible for employees to begin work prior to obtaining Board approval. (Doc. 33-4, Depo. Hack 5-6, 25).

On or about August 3, 2016, Stevens told N. Hayes her doctor cleared her to return to work after September 7, 2016 due to the birth of her child. (Doc. 33-12, P. Ex. 11; Doc. Doc. 33-2, Aff. Stevens at 3; Doc. 33-9, Depo. N. Hayes at 21). Stevens contends N. Hayes confirmed Stevens' position as a 7th grade Social Studies teacher in July 2016 when Stevens notified N. Hayes of her need to start working in September. (Doc. 33-2, Aff. Stevens at 3). N. Hayes denies Stevens' position existed until August 31, 2016. (Doc. 33-9, Depo. N. Hayes at 22-24).

In August, Stevens received emails regarding professional development at Calloway-Smith and a welcome letter; she received notice of her classroom assignment, she was assigned active students, given a class schedule and given a roster of students. (Doc. 32-4, P. Ex. 2; Doc. 32-5, P.

Ex. 3; Doc. 32-17, P. Ex. 23; Doc. 32-22, P. Ex. 28; Doc. 32-25, P. Ex. 35; but see Doc. 33-5, Depo. Walton at 32 (stating these items were delivered in error)).

Stevens was also entered into the Kronos system and issued a timecard for payroll. (Doc. 32-32, Doc. P. Ex. 49; Doc. 32-33, P. Ex. 50; Doc. 33-12, Depo. Torshea Bettis at 17; Doc. 33-8, Depo. M. Hayes at 18; but see Doc. 33-5, Depo. Walton at 30 (stating Stevens was in the system in error). Only Board approved employees are entered into the payroll system. (Doc. 33-8, Depo. M. Hayes at 14). She was listed as an active employee by the Board and listed as absent on maternity leave. (Doc. 32-25, P. Ex. 35; Doc. 32-32, P. Ex. 49; Doc. 32-37, P. Ex. 57; Doc. 32-38, P. Ex. 58; Doc. 33-4, Depo Hack at 9-10; Doc. 33-11, Depo. Rhodes at 3, 7). Her absences were logged in the payroll systems and Stevens was listed as absent with a substitute covering her absences. (Doc. 32-32, P. Ex. 49; Doc. 33-11, Depo. Rhodes at 3).

AESOP is the system that the Board uses to secure a substitute teacher and to record employee absences. (Doc. 33-12, Depo. Bettis at 11-13). Torshea Bettis is the Bookkeeper at Calloway-Smith and is responsible for inputting absences into AESOP. (Id. at 11). Bettis testified she first confirms a classroom requiring a substitute exists; she then acquires the principal's approval before securing a substitute. (Id. at 13-14). Mazadaline Taylor states she was hired to substitute for Stevens' Social Studies class during Stevens' absence at the beginning of the 2016-2017 school year. (Doc. 33-1, Aff. Taylor at 1; Doc. 33-12, Depo. Bettis at 11; but see Doc. 32-35, P. Ex. 53 (Hack emailing "…one of the things I heard but did not understand was that there was a a sub in robin [sic] stevens place from the beginning of the school year, yet robin [sic] was hired into the new position that was added after the school year started.")[7]. Others state Taylor was not secured as a substitute for a specific classroom because that unit did not exist yet.

---

[7] This inquiry from Hack was sent September 26, 2016, after Stevens' leave was already rescinded. (Doc. 32-34, P. Ex. 51 (rescinding leave); Doc. 32-35, P. Ex. 53).

5

(Doc. 33-5, Depo. Walton at 20-22; Doc. 33-12, Depo. Bettis at 9). On August 23, 2016, Stevens was notified that her substitute request starting August 10, 2016 had been fulfilled; the notice also requested Stevens leave the sub, Taylor, feedback. (Doc. 32-18, P. Ex. 24).

On August 25, 2016, Stevens received an email with access information to INow, a grading system with students records. (Doc. 32-21, P. Ex. 27; Doc. 33-2, Aff. Stevens at 5). Stevens states she spoke with Taylor to get an update on her students' progress while Stevens was absent. (Doc. 33-2, Aff. Stevens at 4).

On September 15, 2016, Stevens received notification that her maternity leave had been approved from August 8, 2016 through September 7, 2016. (Doc. 32-29, P. Ex. 40; Doc. 33-4 Depo. Hack at 20; Doc. 33-11, Depo. Rhodes at 10; and see Doc. 33-6, Depo. Lang at 9-10 (explaining an employee's active status is checked prior to granting maternity leave)).[8] Stevens requested to borrow leave from the Sick Leave Bank on September 15, 2016. (Doc. 32-37, P. Ex. 57). The Sick Leave Bank Committee and Smith both separately approved her borrowed leave request on September 20, 2016. (Doc. 32-15, P. Ex. 16, Doc. 32-37, P. Ex. 57; Doc.32-38, P. Ex. 58). Lang, an employee relations clerk with the Board, wrote Stevens on September 22, 2016 asking if Stevens wished to borrow two additional sick leave days in order to be eligible to receive a paycheck. (Doc. 32-8, P. Ex. 7; Doc. 33-10, Depo. Stevens 16-18). Stevens requested two additional days be donated which Lang then processed. (Doc. 33-2, Aff. Stevens at 5; Doc. 32-38, P. Ex. 58).

In September, Stevens' 'active' employment status was changed to reflect September 7, 2016 as her start date, Stevens' status as absent in time and payroll records deleted, and her leave was deleted from the Kronos/AESOP systems. (Doc. 32-7, P. Ex. 6; Doc. 32-15, P. Ex. 16; Doc. 32-

---

[8] Lang is the Employee Relations Clerk and handles employee's medical requests for leave. (Doc. 33-6, Depo. Lang at 2-4).

32, P. Ex. 49; Doc. 32-33, P. Ex. 50; Doc. 33-6, Depo. Lang at 13; Doc. 33-11, Depo. Rhodes at 5-7, 13). Stevens Employee Action Form was also revised on September 22, 2016 to reflect a September 7, 2016 hire date. (Doc. 32-10, P. Ex. 9).

Stevens was also notified September 22, 2016, her maternity leave request was approved in error after realizing Stevens was non-renewed and that she had a start date of September 7, 2016. (Doc. 32-7, P. Ex. 6; Doc. 32-34, P. Ex. 51; Doc. 32-28, P. Ex. 58). Smith notified Lang that Stevens' medical leave approval also needed to be rescinded. (Doc. 33-6, Depo. Lang at 15, 18).

The Board argues the changes were made to correct past errors; Stevens contends these changes were motivated by her sex and pregnancy. Stevens asserted discrimination complaints on September 26, 2016. (Doc. 32-23, P. Ex. 29; Doc. 32-24, P. Ex. 31). On September 30, 2016, Stevens was told her rehire date was September 7, 2016 and as such, she was responsible for all health insurance payments during her leave. (Doc. 33-2, Aff. Stevens at 6-7; Doc. 33-10, Depo. Stevens at 22-23). Stevens elected Cobra to extend her medical and health insurance for herself and her newborn for the interim period. (Id. at 17).

Stevens filed a Charge of Discrimination with the EEOC on January 5, 2017. (Doc. 32-36, P. Ex. 56). Smith responded on behalf of the Board. (Doc. 33-4, Depo. Hack 24). This response stated Stevens' rehire date was September 7, 2016, because of a concern with Stevens' ability to return to work; it did not reference a lack of assignable teaching unit. (Doc. 32-12, P. Ex. 11).

The EEOC issued a letter on April 12, 2018 finding the Board discriminated against Stevens on the basis of her pregnancy. (Doc. 32-39, P. Ex. 59). The Department of Justice issued Stevens a Right to Sue June 14, 2018. (Doc. 32-40, P. Ex. 60). Stevens brought this action against the Mobile County Board of School Commissioners (the Board) August, 9, 2018. (Doc. 1).

**II.     Standard of Review**

7

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56(c)(1)-(4) provides as follows:

> **(c) Procedures.**
> **(1) Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
> **(2) Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
> **(3) Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.
> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

The movant bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the non-movant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter….Instead, '[t]he evidence of the non-movant is to be believed, and all justifiable

inferences are to be drawn in his favor.'" Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992).

### III. Conclusions of Law

### A. Count I: Title VII

Stevens' claims are rooted in the belief that she was discriminated against by the Board in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act and the Civil Rights Act of 1991 (Doc. 1 at 6). Stevens alleges her pregnancy caused the Board to delay hiring Stevens. (Id. at 6-7). In support, Stevens relies on affidavits from human resources personnel, testimonies from Board employees, evidence showing inconsistencies in Board reasoning for the delayed reinstatement date and numerous exhibits displaying communication between Stevens and the Board. (Docs. 32-3—32-40, Exhibits 1-60; Doc. 33-4, Depo. Hack; Doc. 33-5, Depo. Walton; Doc. 33-6, Depo. Lang; Doc. 33-7, Depo. Clark-Jackson; Doc. 33-8, Depo. M. Hayes; Doc. 33-9, Depo. N. Hayes; Doc. 33-10, Depo. Stevens; Doc. 33-11, Depo. Rhodes; Doc. 33-12, Depo. Bettis; Doc. 33-1, Aff. Taylor; Doc. 33-2 Aff. Stevens; Doc. 33-3, Aff. Horner).

Title VII makes it "an unlawful practice for an employer to [] fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's" race or sex. 42 U.S.C. § 2000e–2(a)(1). Stevens may establish her claims with direct evidence, circumstantial evidence, or statistical proof. Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 (11th Cir. 2008). Stevens' claims are based on both direct and circumstantial evidence.

Direct evidence is "evidence which if believed would prove the existence of a fact [in issue] without inference or presumption." Carter v. City of Miami, 870 F.2d 578, 581-82 (11th Cir.

9

1989). It is evidence that illustrates a discriminatory or retaliatory motive, correlated to the discrimination or retaliation complained of by the employee. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004). See, e.g., Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227-1228 (11th Cir. 2002); Taylor v. Runyon, 175 F.3d 861, 867 (11th Cir. 1999); Jones v. Bessemer Carraway Med. Ctr., 151 F.3d 1321, 1323 n. 11 (11th Cir. 1998); Burrell v. Board of Trustees of Ga. Military College, 125 F.3d 1390, 1393 (11th Cir. 1997). Evidence that only suggests discrimination, but requires the factfinder infer discrimination, is not direct evidence; instead, it is circumstantial evidence. Rollins v. TechSouth, Inc., 833 F.2d 1525, 1529 (11th Cir. 1987). "Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [sex] constitute direct evidence of discrimination. Carter, 870 F.2d at 582.

Here, Stevens offers George Smith's explanation to the EEOC of the employment action at issue as evidence of Smith's bias against women, especially pregnant women. (Doc. 32 at 3-9). Specifically, Stevens highlights the portion of Smith's letter to the EEOC in which he writes:

> If an applicant who recommended to be hired, but not yet reporting for work, is for any reason unable to begin work then they are not hired until they can assume the duties of their job. There is no way to determine when or if that person could in fact start work. This would create a prolonged vacancy for that position and limit the system's ability to perform its function. The uncertainty of when a person would actually begin employment places an unreasonable burden upon the system…
>
> We certainly had high hopes of Ms. Stevens being able to return to work which is why another teacher was not hired who would have been willing, ready and able to work from the beginning of school. However, there was no guarantee that Ms. Stevens would be in fact present herself as able to work. There are numerous scenarios and circumstances that would have prevented Ms. Stevens from actually returning to work.
>
> If we had hired Ms. Stevens despite her inability to start work and then she did not return to work, we would have had to proceed with termination before we could hire someone else. This would have placed us at a great disadvantage in being able to fill the vacancy in a timely manner. But she was not hired until she could physically report to work. If she did not report to work when she stated she

was able to start work then we would be in a much better position to hire another teacher in a suitable time frame. (Doc. 32-12, P. Ex. 11).

Steven alleges Smith's statements to the EEOC illlustrate his bias toward women and that he engaged in gendered-stereotyping, showing direct evidence of discriminatory intent.

Sex-based discrimination can occur through sex-stereotyping. Price Waterhouse v. Hopkins, 490 U.S. 228, 235 (1989). Stevens alleges Smith's insinuation that she may or may not return to work shows his sex-based stereotypes regarding women and pregnancy. (Doc. 32 at 5-6). Stevens contends Smith's concern that she may not return to work was based solely on his gender-based beliefs regarding women and their role as caregivers and mothers. (Doc. 32 at 7). However, direct evidence is evidence that does not require inferences or presumptions to find discrimination. Carter, 870 F.2d at 578. Stevens' assertions require an inference be drawn into the meaning behind Smith's words. Facially, Smith's letter to the EEOC appears gender neutral, as it does not contain the blatant remarks required of direct evidence discrimination. Compare with Price Waterhouse Cooper, 490 U.S. at 235. The record fails to show direct discrimination because the evidence requires the factfinder infer or presume discrimination. Carter, 870 F.2d at 578 (noting evidence that infers discrimination is circumstantial evidence, not direct evidence). Therefore, Stevens' direct evidence argument fails.

Stevens also contends circumstantial evidence shows the Board's discriminatory intent. When there is only circumstantial evidence, courts apply the framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000). Under McDonnell Douglas, the plaintiff has the initial burden of establishing a prima facie case of discrimination based on failure to hire. Id. Thereafter, as explained in Mosley, 562 Fed. Appx. at 867-868 (footnote omitted):

> …the employer must then articulate a legitimate, nondiscriminatory reason for its actions, and then the plaintiff must offer evidence that the alleged reasons of the employer are pretext for illegal discrimination. McDonnell Douglas, 411 U.S. at 802–04….
>
> Regarding the defendant's burden to articulate a legitimate, nondiscriminatory reason for their employment decisions, the proffered reason must "rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred." Tex. Dep't of Cmty. Affairs, v. Burdine, 450 U.S. 248, 254…(1981). Defendants need not persuade the court they were actually motivated by the proffered reasons, but must raise a genuine issue of fact as to whether they discriminated against the plaintiff. Id.…

If the employer satisfies this burden, the burden shifts back to the plaintiff to establish pretext. Id. To do so, a plaintiff "cannot merely quarrel with the wisdom of the employer's reason, but 'must meet the reason head on and rebut it.'" Moore v. Jefferson Cty. Bd. of Educ., 2012 WL 3030109, *7 (N.D. Ala. Jun. 11, 2012)). Courts are not concerned with whether an employment decision is prudent or fair, only with whether it was motivated by unlawful animus; for instance, an employer may fire an employee for a reason based on erroneous facts or for no reason at all, so long as the action is not for a discriminatory reason. Pitts v. Housing Auth. for the City of Huntsville, AL, 262 Fed. Appx 953 (11th Cir. 2008). A reason is not pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993). See also Matthews v. City of Mobile, AL, 2016 WL 1736061, *11 (S.D. Ala. May 2, 2016).

However, in Sims v. MVM, Inc., 704 F.3d 1327, 1332–1333 (11th Cir. 2013), the Eleventh Circuit clarified that the McDonnell Douglas framework is not the *sine qua non* for a plaintiff to survive summary judgment. Smith v. Lockheed-Matin Corp., 644 F.3d 1321, 1328 (2011). Instead, "[t]he plaintiff will always survive summary judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." Id. As such, a triable issue of fact exists if the record, viewed in a light most favorable to

the plaintiff, presents a "convincing mosaic" of circumstantial evidence to allow a jury to infer intentional discrimination by the decisionmaker. Id.; Hamilton v. Southland Christian School, Inc., 680 F.3d 1316, 1320 (11th Cir. 2012).

1. **Prima Facie Case**

Stevens must establish a prima facie case of delayed hiring because of her pregnancy/gender to show discrimination based on sex. Lane v. Broward Cty., Fla., 411 Fed. Appx. 272, 273 (11th Cir. 2011). "In a typical failure-to-hire scenario, the plaintiff establishes a prima facie case of unlawful discrimination by demonstrating that: "(1) she was a member of a protected class; (2) she applied and was qualified for a position for which the employer was accepting applications; (3) despite her qualifications, she was not hired; and (4) the position remained open or was filled by another person outside of her protected class." EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1273 (11th Cir. 2002)." Trask v. Secretary, Dept. of Veterans Affairs, 822 F.3d 1179, 1191 (11th Cir. 2016). Stevens is a member of a protected class as a pregnant female, she was qualified for the position and the position remained open after the start of the school year. (Doc. 1 at 7; Doc. 33-9, Depo. N. Hayes at 23-25; Doc. 30-6, Aff. Walton). Stevens alleges that despite her qualifications, the Board delayed hiring her because of her pregnancy and because of the birth of her child. (Doc. 32 at 11; Doc. 33-2, Aff. Stevens at 8).

The Board does not dispute Stevens is a member of a protected class or that she was qualified for the position.[9] (Doc. 29 at 2). The Board does dispute that the delayed hiring was attributable to Stevens' pregnancy. (Doc. 29 at 7). Viewing the facts most favorably to Stevens, the court finds there Stevens has established a prima facie case.

2.      **Legitimate Non-Discriminatory Reasons**

---

[9] Stevens' qualifications are not disputed as she was hired by the Board as a Social Studies teacher. (Doc. 33-2, Aff. Stevens at 1)

13

Under the burden shifting framework, the Board must articulate legitimate reasons for its actions now that Stevens has satisfactorily established a prima facie case of discrimination. McDonnell Douglass, 411 U.S. at 802-03.

The Board articulates two reasons for its delay in hiring Stevens : (1) that the teaching unit was not available until late August 2016 and (2) the Board designated September 7, 2016 as Stevens' rehire date after Stevens told human resources that was the day she could begin work. (Doc. 29 at 7, 8). These reasons are sufficient to "raise a genuine issue of fact as to whether [the Board] discriminated against [Stevens]." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981) ("Defendants need not persuade the court they were actually motivated by those proffered reasons…).

The Court is satisfied that the Board has articulated legitimate nondiscriminatory reasons for delaying Stevens' hiring, and the reasons are "clear and reasonably specific." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 258 (1981). These reasons, "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action," St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993), such that the issue now turns on whether Stevens establishes a genuine issue of material fact that the reasons are pretext.

**3. Pretext**

In an effort to establish pretext, Stevens points to the was she posits as changing reasons for the adverse action against her, as well as to inconsistencies in testimony. (Doc. 32 at 13, 18). Stevens alleges Smith's position letter to the EEOC proves the reason for the delayed hiring was concern about Stevens' ability to return to work. (Id. at 14). Stevens contends this statement suggests a teaching unit was in fact available, Stevens was just not hired until Smith determined she was ready and willing to work. (Doc. 32 at 13-14). Later, the Board asserts the position was

not yet authorized and that it did not exist until the end of August 2016. (Doc. 32 at 14; Exs 11, 51, 58). Stevens presented numerous pieces of evidence which a jury could find contradict this. (Doc. 33-3, Aff. Horner at 1 (stating the position was Stevens' when he contacted her July 12, 2016); (Doc. 32-4, P. Ex. 2; Doc. 32-5, P. Ex. 3; Doc. 32-6, P. Ex. 4; Doc. 32-16, P. Ex. 20; Doc. 32-17, P. Ex. 23; Doc. 32-21, P. Ex. 27; Doc. 33-2, Aff. Stevens at 2-4 (presenting evidence of communications from the Board normally sent only to active employees)); Doc. 32-8, P. Ex. 7; Doc. 32-29, P. Ex. 40 (showing requests and processing of Steven's maternity leave); Doc. 33-4, Depo. Hack, page 17-19 (showing same). Stevens presented evidence that she was assigned a classroom, given a schedule of classes, assigned a class roster, and parents of her students were informed Stevens would return after her maternity leave. (Doc. 32-5, P. Ex. 3; Doc. 32-19, P. Ex. 25; Doc. 32-21, P. Ex. 27; Doc.32-22, P. Ex. 28; Doc. 33-1, Aff. Taylor at 1; Doc. 33-7, Depo. Clark 6-7, 12-14, 15-18; Doc. 33-4, Depo. Hack at 29-30; Doc. 33-5, Depo. Walton at 34-35). A substitute teacher was secured to cover Stevens' class in her absence. (Doc. 33-1, Aff. Taylor at 1; Doc. 33-11, Depo. Rhodes 14-15; Doc. 33-12, Depo. Bettis 8-10, 14-15).

Stevens presented further evidence of her "active employee" status with evidence of access to the KRONOS payroll system, a time card from AESOP, showing as active for maternity leave purposes, and her inclusion in a professional development roster. (Doc. 32-4, P. Ex. 2; Doc. 31-11, P. Ex. 10; 32-25, P. Ex. 35; Doc. 32-32, P. Ex. 49; Doc. 32-37, P. Ex. 57; Doc. 32-38, P. Ex. 58; Doc. 33-4, Depo. Hack 35-36; Doc. 33-12, Depo. Bettis 12-14, 17; Doc. 33-8, Depo. M. Hayes 2-3, 5, 11-12, 14-15; Doc. 33-11, Depo. Rhodes 3, 6-8, 18-19). An Employee Action Form confirming Stevens assignment as a Social Studies teacher effective August 8, 2016 was created; it was later modified to reflect September 7, 2016 as the effective date. (Doc. 32-10, P. Ex. 9; Doc. 32-15, P. Ex. 16; Doc. 32-32, P. Ex. 49; Doc. 32-33, P. Ex. 50; Doc. 33-4, Depo.

Hack 13). Stevens' maternity leave was processed and approved; her leave request was later processed and approved by the Sick Leave Bank, granting Stevens additional leave days and borrowed leave days from the Sick Leave Bank. (Doc. 32-7, P. Ex. 6; Doc. 32-9, P. Ex. 8; Doc. 32-15, P. Ex. 16; 32-29, P. Ex. 40; Doc. 32-37, P. Ex. 57; Doc. 32-38, P. Ex. 58; Doc. 33-4, Depo. Hack 19; Doc. 33-11, Depo. Rhodes 10-14; Doc. 33-6, Depo. Lang 14, 16-18).

Stevens' evidence supports an reasonable inference that she was an "active employee" prior to September 7, 2016. This contradicts the Board's contention that a unit was not yet available and that Stevens' hire date was instead September 7, 2016. (Doc. 32 at 14; Doc. 32-12, P. Ex. 11; Doc. 32-34, P. Ex. 51; Doc. 32-38, P. Ex. 58).

Smith's position paper to the EEOC could also be interpreted as inconsistent. (Doc. 32-12, P. Ex. 11). The position paper states Stevens's ability to work as the reason for her delayed hiring. However, the Board also alleges the reason for the delay was the lack of an open position. (Id.; compare with e.g., Doc. 33-5, Depo. Walton at 30). Shifting reasons that would allow a jury to question an employer's credibility can help demonstrate the pretextual nature of an employer's explanation for terminating an employee. See, e.g., Cleveland v. Home Shopping Network, 369 F.3d 1189, 1194 (11th Cir. 2004); Bechtel Constr. Co. v. Sec. of Labor, 50 F.3d 926, 935 (11th Cir. 1995).

The court finds that Stevens has presented sufficient evidence which would allow a reasonable factfinder to infer the Board's proffered reasons are pretext for pregnancy/gender discrimination.

As such, the Defendant's Motion for Summary Judgment on Stevens' Title VII sex discrimination claim (Count I) is **DENIED**.

**B.      Count II: Family and Medical Leave Act**

Stevens asserts the Board interfered with her rights under the Family and Medical Leave Act of 1993 (FMLA). (Doc. 32 at 21). Stevens states she requested FMLA leave in June 2016 which was subsequently reviewed and approved September 16, 2016. (Doc. 32-8, P. Ex. 7; Doc. 32 at 22). After the Board approved her leave, it notified Stevens the approval was in error and rescinded the leave. (Doc. 32 at 22). Stevens alleges the Board thereafter modified her hire date which changed her employment status and resulted in a denial of benefits she was entitled to under the FMLA. (Id.)

She states N. Hayes exhibited animus toward her about her delayed start date and Stevens felt pressured to return to work earlier than Stevens' physician allowed. (Id.) Stevens contends the Board modified her hire date after learning about her September start date and non-renewed status. (Id.)As a result, she became ineligible under the FMLA and her FMLA leave was rescinded. (Id.)

To state a claim for interference under the FMLA, "an employee need only demonstrate by a preponderance of the evidence that [she] was entitled to the benefit denied. Strickland v. Water Works and Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1206-07 (11th Cir. 2001). The employer's motives are irrelevant in this inquiry. Krutzig v. Pulte Home Corp., 602 F.3d 1321, 1235 (11th Cir. 2010) (citing Strickland at 1208). An interference claim arises when an employee alleges that her employer denied her substantive rights entitled to her under FMLA. Strickland, 239 F.3d at 1206.

"The FMLA provides eligible employees with 'a total of 12 workweeks of leave during any 12-month period…[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" Gay v. Gilman Paper Co., 125 F.3d 1432, 1436 (11th Cir. 1997) (quoting 29 U.S.C. § 2612(a)(1)(D))). Employees need to give

notice at least thirty days in advance of foreseeable medical treatments. Id. at 1434. Where the medical condition is not foreseeable, an employer cannot deny an employee FMLA leave when the employee notified her employer "as soon as practicable." 60 C.F.R. 825.303. Further, the determination as to FMLA eligibility is to be made as of the date the FMLA leave is to begin. Pereda v. Brookdale Senior Living Communities, Inc., 666 F.3d 1269, 1274 (11th Cir. 2012) (citing 60 C.F.R. § 825.11). "[B]ecause the statute contemplates notice of leave in advance of becoming eligible, i.e., giving birth to a child, the FMLA regulatory scheme must necessarily protect pre-eligible employees…, who put their employers on notice of a post-eligibility leave request." Id. at 1275

Here, the issue turns on Stevens' eligibility. The term "eligible employee" as contemplated by the Act is "an employee who has been employed (1) for at least 12 months by the employer to whom leave is requested under section 2612 of this title; and (2) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 C.F.R. § 825.110(c). Stevens contends she was employed by the Board for the required 12 months and had worked at least 1250 hours during the 12-month period preceding her leave. (Doc. 1 at 4).[10]

Stevens also states she gave the required notice when she requested medical leave for her pregnancy in June 2016. (Doc. 32-8, P. Ex. 7). "An employee is not required to assert expressly her right to take leave under the FMLA." Cruz v. Publix Super Markets, Inc., 428 F.3d 1379, 1382 (11th Cir. 2005) (Citing 29 C.F.R. §§ 825.302(c), 825. 303(b). The notice just needs to be enough to make the employer aware "the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c). Stevens' notice included

---

[10] The twelve months of employment requirement does not require twelve consecutive months of employment but rather counts any time worked for that same employer. Fact Sheet #28: The Family and Medical Leave Act. https://www.dol.gov/whd/regs/compliance/whdfs28.htm.

the reason for her leave request as well as the duration and timing of the request from August 6, 2016 through September 7, 2016. (Doc. 32-8, P. Ex. 7).

The Board disputes Stevens' eligibility for FMLA leave alleging Stevens was not an employee at the time FMLA leave was requested. (Doc. 29 at 8). Because our caselaw acknowledges the Act protects pre-eligibility employees who request leave post-eligibility, this claim turns on whether Stevens was eligible when the requested FMLA leave was to begin. See Pereda, 666 F.3d at 1275. Stevens requested her FMLA leave begin August 6, 2016. At that point, she alleges she was employed for the required 12-months and worked the 1,250 required by the Act. (Doc. 1 at 4). The Board alleges Stevens was not hired until September 7, 2016, and as such not an employee when the FMLA leave was requested to begin on August 6, 2016. (Doc. 32-7, P. Ex. 6; Doc. 32-11, P. Ex. 10; Doc. 32-12, P. Ex. 11; Doc. 33-9, N. Hayes Depo. 24-25). Stevens does not dispute she began work September 7, 2016, but contends the Board changed her start date to September 7, 2016 in order to deny her the protection of the FMLA. (see e.g., Doc. 32-7, P. Ex. 6). At this stage in the proceeding, viewing the facts most favorably to Stevens, the court finds that there is a genuine dispute of material fact (i.e., when was Stevens employed) for a fact-finder to resolve. Consequently, the Defendant's motion for summary judgment as to Count II is **DENIED**.

## IV. Conclusion

For the reasons discussed herein, the Defendants' Motion for Summary Judgment is **DENIED** on all claims.

**DONE** and **ORDERED** this the 15th day of October 2019.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**