**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **ROBYN STEVENS,** ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **CIVIL ACTION NO. 1:18-cv-350-KD-B** |
| ) | |
| **MOBILE COUNTY BOARD OF** ) | |
| **SCHOOL COMMISSIONERS** ) | |
|     **Defendant.** ) | |

## ORDER

This matter is before the court on Plaintiff Robyn Stevens' motion for attorney's fees and costs (Doc. 75); Defendant Mobile County Board of School Commissioners' opposition (Doc. 77); and Plaintiff's reply. (Doc. 80).

### I.    Background

Plaintiff Robyn Stevens (Stevens) brought suit against the Defendant Mobile County Board of School Commissioners (the Board) alleging 1) violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1991; and 2) interference with her rights under the Family and Medical Leave Act of 1993 (FMLA).

Stevens worked as a non-tenured Social Studies teacher at Calloway-Smith middle school for the 2015-2016 school term. Stevens was non-renewed on May 25, 2016 because Calloway-Smith lost two teaching units. (Doc. 32-15, P. Ex. 16; Doc. 32-27, P. Ex. 37; Doc. 33-10, Depo. Stevens at 2; Doc. 33-4, Depo. Bryan Hack at 3; Doc. 33-5, Depo. Dorothy Walton at 16-17). Non-renewal was customary for non-tenured teachers. (Doc. 33-4, Depo. Hack at 2; Doc. 33-5, Depo. Walton at 17). Stevens maintained her qualifications and certification to teach grades 4-12 in the state of Alabama. (Doc. 33-2, Aff. Stevens at 1).

Stevens was eventually rehired for the 2016-2017 school year as a Social Studies teacher at Calloway-Smith middle school. In July 2016, Stevens applied for maternity leave to run from August 8, 2016 through September 7, 2016. (Doc. 32-8, P. Ex. 7). Stevens received an email September 15, 2016 that her maternity leave had been approved. (Doc. 32-29, P. Ex. 40). Subsequently, Stevens' employment status was changed to reflect a start date of September 7, 2016. (Doc. 32-7). On September 22, 2016, Stevens was notified that her maternity leave request was approved in error since her hire date was September 7, 2016 and not August 8, 2016. (Id.). The Board argued the changes were made to correct past errors; Stevens contended these changes were motivated by her sex and pregnancy.

On January 27, 2020, the jury was sworn and trial commenced. On January 29, 2020, the jury returned a verdict finding the Board delayed rehiring Stevens in violation of the FMLA. (Doc. 67-1). The jury found in the Board's favor on Stevens' Title VII claim. (Id.).

Stevens now seeks attorney's fees and costs asserting that she is the "prevailing party" under the FMLA. (Doc. 75-1 at 1). Specifically, Stevens seeks an award of $180,091.00 in attorney's fees and $5,979.57 in costs pursuant to 29 U.S.C. § 1132(g)(1),[1] Federal Rules of Civil Procedure 54, and S.D. Ala. L. R. 54, against the Board (Doc. 75-1). In support, Stevens submitted affidavits from attorneys Rocco Calamusa, Jr. (Doc. 38-3), Henry H. Brewster (Doc. 75-4), and Steven's counsel, Mary Pilcher (Doc. 75-5);  a declaration by attorney Peter S. Mackey (Doc. 75-6), billing records; and a Bill of Costs (Doc. 75-2, 75-7).

## II.    __Relevant Law__

The FMLA permits a court to award "reasonable attorney's fees…and other costs of the action to be paid by the defendant" "in addition to any judgment awarded to the plaintiff." 29

---

[1] The FMLA enforcement provision also allows for attorney's fees but it is 29 U.S.C. § 2617(a)(3) not 29 U.S.C. § 1132(g)(1).

U.S.C. § 2617(a)(3).[2]  Courts within the Eleventh Circuit use the "lodestar" method determine to determine the reasonable fee award. Norman v. Hous. Auth., 836 F.2d 1292, 1299 (11th Cir. 1988). The lodestar is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. Gonzalez v. Rainforest Café, Inc., 2018 WL 3635110, *2 (M.D. Fla. 2018) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) and applying the lodestar analysis in an FMLA case).

A.    **Reasonable Hourly Rate**

"[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Duckworth v. Whisenant, 97 F.3d 1393, 1396 (11th Cir. 1996) (internal quotations and citations omitted). "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rare for an attorney's services is the place where the case is filed." American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999). "The party seeking attorney's fees bears the burden of establishing that the requested hourly rate is in line with prevailing market rates." Maner v. Linkan LLC, 602 Fed.Appx. 489, 493 (11th Cir. 2015) (citing Norman, 836 F.2d at 1299).

 "In establishing a reasonable hourly rate, the district court may rely on its own expertise and where appropriate may also consider [the Johnson] factors." Maner, 602 Fed.Appx. at 493 (citing Norman, 836 F.2d at 1299-1300). And see In re Home Depot Inc., 931 F.3d 1065, 1091

---

[2] Courts in this circuit have cited to 42 U.S.C. § 1988(b) attorney's fees cases in determining the reasonableness of fees in FMLA cases. See e.g., Gonzalez v. Rainforest Café, Inc., 2018 WL 3635110, *2 (M.D. Fla. 2018); Cheetham v. CSX Transportation, Inc., 2011 WL 13176217, *8 (M.D. Fla. 2011); Alger v. Prime Restaurant Management, LLC, 2016 WL 3741984, *10 (N.D. Ga. 2016); Spakes v. Broward County Sherriff's Office, 2008 WL 11334933, *2 (S.D. Fla. 2008).

(11th Cir. 2019) ("[A]fter counsel proposes an hourly rate based on the prevailing market rate in the community, courts may consider the Johnson factors to determine if the proposed rate accurately reflects the true worth of counsel.") (citing references omitted).[3]  These factors include: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to the acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

**B.**    **Hours Reasonably Expended**

In determining the reasonableness of the hours expended, the Court should not include hours that are "excessive, redundant, or otherwise unnecessary." Norman, 836 F.2d at 1301 (quoting Hensley, 461 U.S. at 434). The Court will not permit a party to recover fees for hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." Id. (emphasis omitted). "The fee applicant bears the

---

[3] The Eleventh Circuit explained:

> While the Supreme Court reserves this analysis—whether the market rate is an accurate reflection of counsel's true worth—for the adjustment stage, the result is the same. We use the *Johnson* factors to adjust the hourly rate, the Supreme Court uses the *Johnson* factors to adjust the overall lodestar. Either way, the *Johnson* factors are relevant only in the rare cases where they are not fully captured in the lodestar.

> The crucial point, under both line of precedents, is that the *Johnson* factors are largely redundant to the lodestar analysis because they are almost always subsumed in the lodestar. Consequently, it would be inefficient, to say the least, to require district courts to slog through the *Johnson* factors when those factors have little independent bearing on the analysis.

In re Home Depot, 931 F.3d at 1091.

burden to establish that the hours for which the fees are sought were 'reasonably expended *on the litigation.*'" Maner, 602 Fed.Appx. at 491 (citing Barnes, 168 F.3d at 427) (emphasis added).

### III.   Lodestar analysis

### 1.   Reasonable Hourly Rate

#### A.   Steven's counsel

As the party requesting fees, Stevens bears the burden of supplying the Court with specific and detailed evidence from which the Court can determine the reasonable hourly rate for the work performed. Barnes, 168 F.3d at 427 (citing Norman, 836 F.2d at 1303). "[T]he prevailing market rate" here is Mobile, Alabama. Barnes, 168 F.3d at 437 (providing that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed[]'"). And see Norman, 836 F.2d at 1299 (the relevant legal market determines the reasonableness of the hourly rate).

As discussed *supra,* the Court is familiar with the prevailing rates in Mobile and may act as its own expert, relying on its "knowledge and experience" to determine the reasonableness and propriety of the requested rates (the fifth Johnson factor). Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994). Moreover, this Court's prior awards are relevant and instructive in determining whether the "requested rate is in line with prevailing market rates" in this district for attorneys of reasonably comparable skill, experience, and reputation to the attorney seeking an award of fees— the twelfth Johnson factor. Langford v. Hale Cty. Ala. Comm'n, 2016 WL 4976859, *3 (S.D. Ala. Sept. 16, 2016).

Stevens seeks to recover $450 per hour for counsel Mary E. Pilcher. (Doc. 75-1 at 7, n.6). In support, Stevens submitted the affidavit of counsel Pilcher attesting to the reasonableness of her fees. (Doc. 75-5). Stevens also provided an affidavit from attorney Rocco Calamusa, Jr. (Doc. 75-

3). Calamusa expressed the requested hourly rate "is commensurate with the prevailing range of rates charged by attorneys in similar circumstances and with comparable skill and responsibility in similar areas of litigation in Alabama, including Mobile. (Id. at 4). Calamusa stated that ten (10) years ago he and Pilcher were awarded an hourly rate of $400 in *Gibbs v. Georgia Pacific*, 1:08-cv-196-KD-C and he has been awarded $400 and $475 in other cases. (Id.).

**Calamusa's affidavit in incorrect**.   In Gibbs v. Georgia-Pacific Wood Products LLC, Civil Action No. 08-00196-**CG**-C (S.D. Ala. 2008) (Doc. 45), Magistrate Judge Cassady granted a motion to compel and granted plaintiff's request for reimbursement of a reasonable attorney's fee and costs. Pilcher requested **$300.00 per hour** (Doc. 49-1 at 6). Calamusa requested **$300.00 per hour.** (Id. at 14). Judge Cassady granted the motion as requested. (doc. 55).  In doing so, Judge Cassady stated that "[n]othing about entry of this order is viewed by this Court, nor should it be viewed by counsel for plaintiff, as a concession on the defendant's part about the reasonableness or appropriateness of the rates set forth in the affidavits of counsel for plaintiffs"  and left open for the defense to challenge the reasonableness of the fees should plaintiff ultimately prevail. (Doc. 55). The case was dismissed on notice of settlement. Other than Judge Cassady's order, the Court did not find an order awarding attorney fees and certainly did not find $400 to be a reasonable attorney fee.

Stevens also submitted an affidavit from attorney Henry H. Brewster, Jr., attesting to the undesirability of handling civil rights cases in Mobile and to reasonable attorney's rates in the Mobile market. (Doc. 75-4). Brewster says he "would not consider it unreasonable for such a practitioner in a particular case, to demand a 50% contingency fee arrangement and or to seek $400 an hour in compensation in non-contingency relationships." (Doc. 75-4 at 4). He also states clients in the Southern District of Alabama "face severe obstacles in finding representation" on a

contingency fee basis "particularly in situations where the law firm would advance costs." (Id. at 3). Moreover, per Brewster, "the current awarded rates have not succeeded in attracting practitioners from the large, ostensibly plaintiff-oriented Mobile law firms. Consequently, it would stand to reason that a much higher awarded rate would be necessary to attract counsel to fulfill Congressional intent." (Id. at 4). Additionally, Stevens offers a declaration from Peter S. Mackey in which he opines that "handling a discrimination case like this one, where the lawyer agrees to advance the costs of litigation, is a big risk and one that justifies a contingent fee rate of 45-50% or $375 to $450 per hour for an hourly award." (Doc. 75-6 at 3).

Pilcher states that she was admitted to practice law in Alabama in September of 1985 and has practiced in Mobile since 2001. (Doc. 75-5 at 1-2). Pilcher is also admitted "to practice in all courts of the State of Alabama, United States District Court for the Southern, Middle, or Northern Districts of Alabama, and the Middle District of Florida… the Court of Appeals for the Eleventh Circuit…[and] in all courts in the State of Florida and Massachusetts." (Doc. 75-5 at 2). Pilcher asserts that based on her "knowledge[] of the hourly rates charged by law firms throughout the state for litigation involving comparable skill, effort and responsibility in similar circumstances to that currently before the Court. The hourly rate billed in the present case is consistent with the applicable range of such prevailing hourly rates." (Id. at 6). She then states that her hourly rate is reasonable. (Id. at 8)

The Board has not contested Stevens is entitled to attorney's fees, but argues her requested fee award is unreasonable. (Doc. 77 at 1). The Board cites an award of the plaintiff's attorney of $300 per hour as more reasonable. (Id. at 4) (citing Galbreath v. Hale County, Alabama Commission, 2017 WL 3584920, *5 (S.D. Ala. 2017).

Lastly, the Board argues "Plaintiff's counsel was paid an hourly rate by the [Alabama Educator's Association] AEA" which does not preclude Stevens from seeking attorney's fees but "it does mitigate against some of the factors utilized to determine the lodestar…" (Id.). Per the Board, the fact that Stevens' counsel "already received compensation for representing [Stevens] regardless of the outcome" mitigates against the following lodestar factors: "the preclusion of other employment opportunities caused by accepting the case, whether the fee is fixed or contingent, and the undesirability of the action." (Id.).

Although the Court does not give controlling weight to prior awards, those awards are instructive and relevant in determining the reasonableness of an attorney's requested rate for attorneys of reasonably comparable skill, reputation, and experience. Norman, 836 F.2d at 1299. See Langford, 2016 WL 4976859, *4-*5 (S.D. Ala. 2016 ) (awarding attorney with little civil rights experience and 20 years of experience $275 an hour); Galbreath, 2017 WL 3584920, *3 (S.D. Ala. 2017) (awarding the same attorney from Langford, 2016 WL 4976859, $300 an hour one year later); Weaver v. Stringer, 2019 WL 1495279, *5, n.8 (S.D. Ala. 2019) (awarding attorney with 38 years of experience[4] $350 an hour in a discovery dispute); Brown v. Lambert's Café III, 2016 WL 325131, *2 (S.D. Ala. 2016) (awarding attorney with 32 years of experience $325 an hour).

Johnson factors three and nine – "the skill requisite to perform the legal service properly" and "the attorney's experience, reputation, and ability"—may also be considered in determining the reasonable hourly rate. As to legal skill, the Eleventh Circuit instructed district courts to consider the "judgment shown in case assessment," "expertise in negotiations and tactics," "organization and efficiency," "knowledge of trial practice and knowledge of the substantive law,"

---

[4] The attorney was Henry Brewster.

and "persuasiveness of the attorney." <u>Norman,</u> 836 F.2d at 1300-01. "It is the job of the district

court in a given case to interpolate the reasonable rate based on an analysis of the skills enumerated

above which were exhibited by the attorney in the case at bar…" <u>Id.</u> at 1301. The Court observed

Pilcher's skills in pursuing Stevens' claims against the Board.

As to experience, Pilcher's affidavit states that the majority of her practice, over 90%, "has

been in the field of civil rights and Constitutional law." (Doc. 75-5 at 2). Per Pilcher, the majority

of the civil rights and Constitutional law work has been "in the area of employment litigation…"

(<u>Id.</u>). She has represented individual plaintiffs in civil rights cases as well as "plaintiffs in a number

of class actions." (<u>Id.</u>).

The Court may also consider the preclusion of other employment, whether a fee is fixed or

contingent, time limitation imposed by the client or circumstances, and the undesirability of the

litigation—the fourth, sixth, seventh and tenth <u>Johnson</u> factors. As to the preclusion of other

employment, Stevens asserts "the commitment and time required to properly pursue Stevens'

claims" did deter Stevens' counsel's ability to pursue other cases. (Doc. 80 at 5). According to

Stevens' counsel, "the fee shifting provisions of the FMLA was a substantial factor" in deciding

whether to take the case. (<u>Id.</u>). Moreover, Pilcher explains:

> The fee shifting provision…would protect the attorney and insure that the
> customary and market attorney rate would be received for the work incurred. This
> fee shifting provision was considered prior to agreeing to litigate the claims since
> taking the case would limit the Plaintiff's [counsel's] ability as a one person law
> firm to take other cases where her customary billing rates would be applied.

(Doc. 80-1 at 2).

The Board asserts AEA's involvement in the case mitigates against the <u>Johnson</u> factor—

the undesirability of the action. (Doc. 77 at 4). It then states "the desirability was not an issue since

the representation was a result of a contract with the AEA." (<u>Id.</u>). Brewster and Calamusa both

state civil rights litigation is viewed as undesirable in part because of a risk that the cases will be lost without any compensation. (Doc. 75-4 at 3; Doc. 75-3 at 2). Calamusa states:

> Discrimination and FMLA cases are…undesirable for several reasons which are applicable to this case: (1) the plaintiff almost always lacks the financial resources to vigorously prosecute the action or pay for even routine expenses and attorney's fees; (2) the nature and state of the law in this area, along with Federal Court practice; (3) many cases are lost without compensation or reimbursement for even out-of-pocket expenses; (4) the limited nature of damages available in FMLA cases; and (5) considerable time can pass before any attorney's fees are even considered.

(Doc. 75-3 at 3). Brewster provides similar explanations for why these types of cases are undesirable. (Doc. 75-4 at 3). He states also that "[t]he Court might take judicial notice of the decreasing number of attorneys in the area who are willing to undertake discrimination cases on behalf of plaintiffs in Federal Court." (Id. at 2). He estimates that there are only 5-10 attorneys today who would handle cases like Stevens'. (Id.). Per Brewster, he "believe[s] there is a pressing need for litigators for plaintiffs in employment cases" and "[p]articularly there is a perception by the statewide plaintiffs' bar, that the Southern District of Alabama is not sympathetic to plaintiff's employment cases or civil rights cases in general." (Id. at 3). Pilcher however, did receive compensation during the proceeding albeit it was "less than the customary fee." This lessened some of the risks associated with the action—i.e., the risk of not receiving any compensation—making it more desirable than other employment or civil rights cases.

The Board further asserts AEA's involvement in the case mitigates against whether the fee is fixed or contingent. (Doc. 77 at 4). The Board asserts "Stevens' attorney was not having to wait until the end of litigation to receive compensation" and "Steven' attorney has already received compensation for representing [Stevens] regardless of the outcome." (Id.). Stevens responds that "AEA paid expenses and a small portion of fees to insure that protections against the civil rights violations were addressed and corrected…" (Doc. 80 at 6). However, per Stevens, this does not

lessen the risk of the action or "the fact that there was a contingency basis to the expected recovery." (Id.). Stevens asserts that the possibility of recovery in this case was small because of the limited about of damages she suffered. (Doc. 80 at 6). "As a result, the risk of litigation to pursue such a small claim was much higher than normal since the cost of litigation was always expected to be higher than the potential recovery to the client." (Id.). Stevens asserts that the ability to recoup attorney's fees under the fee shifting statute justified that potential for loss. (Id.). Moreover, according to Stevens' counsel, AEA did not pay Pilcher "the customary [fee] rate" and AEA is "expecting reimbursement of all costs and fees paid to them in the event that plaintiff prevailed." (Doc. 80-1 at 2). Despite the limited nature of the recoverable damages in this case, the fee was not wholly contingent on Stevens' success at trial because AEA had to be reimbursed only "in the event that plaintiff prevailed" at trial. (Doc. 80-1 at 2).

Upon consideration of the above, the Court finds **$350 per hour** is a reasonable hourly rate for Pilcher. This rate recognizes Pilcher's skill in litigating civil rights cases while taking into account the mitigating factors related to AEA's involvement in Stevens' case. The Court also finds that the awarded hourly rate is sufficient to encourage capable attorneys to represent civil rights and employment discrimination clients, even though there is a risk of non-payment and a risk that representation could preclude other employment. See Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010) ("a 'reasonable fee' is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious claim.").

B.      **Stevens' paralegal**

Stevens seeks "$110 per hour for paralegal fees incurred on behalf of the client by Brandi Hattenstein." (Doc. 75-1 at 7). The Board argues Stevens "has not presented any evidence as to the prevailing rates for paralegal work. Assuming that such evidence is presented, Defendant has

no way to rebut that evidence…" However, footnote 6 in Stevens' motion for attorney's fees does discuss reasonable rates for paralegal work. (Doc. 75-1 at 7, n.6). Though relegated to a footnote, Stevens does present cases from this district in support of $110 per hour for Hattentstein. (Id.). Additionally, in Stevens' reply she states "Hattenstein has been trained and is experienced to handle complex litigation matters." (Doc. 80 at 7). Moreover, Pilcher in her supplemental affidavit states that Hattenstein "has over 3 years experience as a paralegal in complex employment litigation, medical malpractice, wrongful death, and class actions." (Doc. 80-1 at 3).

This Court has approved as reasonable a rate of $75.00 for paralegals. See d'Amico Dry d.a.c. v. Nikka Fin., Inc., No. CV 1:18-00284-KD-MU, 2019 WL 2995922, *5 (S.D. Ala. 2019) (reducing requested rates of $125 and $135 for paralegals to $75/hour). And see Precision IBC, Inc. v. Phoenix Chem. Techs., LLC, No. CV 15-00637-C, 2017 WL 1404328, *3 (S.D. Ala. 2017) (citing cases for the proposition that "in this market, [the United States District Court for the Southern District of Alabama] regularly approves hourly rates of $75.00 for paralegals"); PNC Bank v. Classic Crab, Inc., No. CV 15-00459-KD-C, 2016 WL 1587237, *5 (S.D. Ala. 2016) (reducing a requested paralegal rate of between $85.50–$90.00 to $75.00 hourly). Moreover, Stevens has not shown that Hattenstein has "unusually advanced qualifications of expertise" sufficient to support awarding a higher rate than that typically awarded. Environmental Services, Inc. v. Colonel McCrary Trucking, LLC, 2011 WL 1883009 (S.D. Ala. 2011) (reducing paralegal award to $75 an hour because there was no proof of "unusually advanced qualifications or expertise"). And see SE Property Holdings, LLC v. Stradley, 2012 WL 2130806 (S.D. Ala. 2012) (awarding the typical rate of $75 an hour where no evidence was submitted of expertise or special qualifications); Precision IBC, Inc. v. Phoenix Chem. Techs., LLC, 2017 WL 1404328, *3 (S.D. Ala. 2017) ("It has not been shown that Ms. Bush 'possesses unusually advanced qualifications or

expertise'") (citing <u>SE Prop. Holdings, LLC v. Green,</u> 2013 WL 790902, *6 (S.D. Ala. 2013)). The Court therefore reduces the requested rates of $110 for Hattenstein and instead finds as reasonable an hourly rate of **$75.00**.

2.    **Reasonable Hours**

    A.    **Stevens' counsel**

The Board also argues Stevens requested hours are unreasonable. (Doc. 77 at 1). Specifically, the Board objects to "any hours related to the unsuccessful Title VII claim." (Doc. 77 at 6). According to the Board, only the actions of George Smith and Gretchen Lang were related to Stevens' FMLA claim. (<u>Id.</u>). As such, the Board objects to 32 attorney hours for which Stevens' seeks attorney's fees that concern individuals not George Smith or Gretchen Lang. (<u>Id.</u>). Specifically, the Board objects to the following time entries:

> 4/24/19 Attend deposition of Robinson and Hayes 5 hours (Page ID.827) [Doc. 75-7 at 4]
> 5/8/19 Rev. errata sheet and changes of Theda Rhodes 0.4 hours (Page ID.827) [Doc. 75-7 at 4]
> 5/13/19 Pull and review file and exhibits and prep for Hack deposition 5 hours (ID.827) [Doc. 75-7 at 4]
> 5/14/19 Finalize exhibits and attend depositions of 30 (b)(6) Hack 3.5 hours (Page ID.827) [Doc. 75-7 at 4]
> 5/22/19 Several emails to and from client re: depositions and Bettis information; review documents and exhibits; prep for depositions of long Lang and Bettis 2 hours (Page ID. 27) [Doc. 75-7 at 4]
> 5/23/19 Continued prep and attend depositions of Lang and Bettis 2.5 hours (Page ID. 827) [Doc. 75-7 at 4]
> 5/24/19 Email from Carbo re: identification of Mavis Hayes 0.2 hours (Page ID.827) [Doc. 75-7 at 4]
> 5/29/19 Emails to Carbo re: Hayes depo; prepare notice depo and file 0.6 hours (Page.827) [Doc. 75-7 at 4]
> 6/3/19 Prepare for depositions; attend deposition of Mavis Hayes 2 hours (Page ID.827) [Doc. 75-7 at 4]
> 9/4/19 Finalize summary of Bettis depo; summarize Clark depo; begin summary of Hack depo; begin preparation of Statement of Fact 5 hours (Page ID.827) [Doc. 75-7 at 4]
> 9/6/19 Summary of Hayes depo 3 hours (Page ID.827) [Doc. 75-7 at 4]

> 9/8/19 Summary of Mavis Hayes and Rhodes 4 hours (Page ID.828) [Doc. 75-7 at 5]
> 9/9/19 Summary of Walton deposition, summarize Hays deposition 4 hours (Page ID.828) [Doc. 75-7 at 4]

(Doc. 77 at 6).

Stevens responds that the individuals "were all relevant and essential to establishing that Plaintiff was, in fact, an employee eligible to receive FMLA benefits…to establish her employment status" and to be able to respond to the Board's affirmative defenses. (Doc. 80 at 3). The Court disagrees with the Board that only the actions of Gretchen Lang and George Smith were necessary for Stevens' FMLA claim. (Doc. 77 at 6). A crucial element of Stevens' FMLA claim required she prove her eligibility for FMLA benefits. Each of the individuals the Board seeks to exclude provided information necessary for the jury to determine Stevens' employment status for FMLA eligibility.

The Court has reviewed the time billed, 389.2 hours[5], by attorney Pilcher. (Doc. 75-7). The Court finds the following 4.5 hours to be unrelated to Stevens' FMLA claim, unrecoverable, or inseparably grouped with unrecoverable time[6]:

| | |
|---|---|
| 8/9/18 | File complaint and prepare summons; emails to and from client re: same (1.1 hours) |
| 11/20/18 | Text cut off (2.7 hours) |
| 12/11/18 | Calendar Court Scheduling Order (0.3 hours) |
| 7/30/19 | Request AEA fees; RTT client re: offer (0.4 hours) |

---

[5] Stevens submits a total of 461.7 hours. (Doc. 75-7 at 8). The Court calculates a cumulative total of 447.9 billed hours consisting of 389.2 hours for Pilcher and 58.7 hours for Hattenstein.

[6] See TMI Mgmt. Sys., Inc., 2012 WL 4435304, *5 (S.D. Ala. 2012) (finding "telephone call to client re: scheduling appointment," "receipt and download of order," and "review of the Court's Order…" non-compensable); Davis–Jeffries–Hunold, Inc., 2012 WL 5470131, *7 (S.D. Ala. Nov. 9, 2012) (time spent by paralegals "receiving, reviewing, and indexing documents," "sending or receiving emails with documents attached," "preparing the civil cover sheet and summons," "receiving and indexing certified mail receipts," and "e-filing documents with the Court and receiving and indexing those documents" was not compensable time for the purposes of the fee petition).

(Doc. 75-7 at 1-8).

A review of the remaining billing records does not reveal excessive, redundant or unnecessary hours.[7] The billing records support a finding of reasonable hours billed. Thus, the Court finds reasonable the **384.7 hours[8]** billed by Pilcher.

### B.    Stevens' paralegal

As to Stevens' request for fees for paralegal work, the Board objects to 12.25 hours contending the hours contain work that is "clerical in nature" and are therefore non-recoverable. (Doc. 77 at 6). Specifically, the Board contends the following line entries are non-compensable:

> 4/18/19 Prepare documents for deposition, prepare exhibits for deposition 4 hours (Page ID. 827) [Doc. 75-7 at 4]
> 4/22/19 Prepare documents for deposition, prepare exhibits for deposition 4 hours (Page ID. 827) [Doc. 75-7 at 4]
> 10/23/19 Paralegal review and organize all documents in preparations for trial 2.5 hours (Page ID. 828) [Doc. 75-7 at 5]
> 1/3/20 Travel to Courthouse to receive jury questionnaires 1.75 hours (Page ID. 829) [Doc. 75-7 at 6]

(Id. at 5).

Stevens responds that paralegal Hattenstein's hours are recoverable because the tasks performed "[are] not considered to be clerical work." (Doc. 80 at 7). "Hattenstein was assisting with document review prior to the trial to identify relevant exhibits to be used during the trial of this matter and to correlate each such document with specific witnesses." (Id.). Pilcher stated in her supplemental affidavit that "[w]ork was not charged for marking the exhibits and/or other clerical work…" (Doc. 80-1 at 3).

---

[7] There are block entries that have EEOC-related tasks included in the descriptions. It appears that Pilcher has decreased the time billed for these entries even though her billing ledger does not break down each task into specific parts.

[8] This figure represents Stevens' counsel's cumulative total, 389.2 hours, less the 4.5 hours of non-recoverable time.

"Courts in this district generally consider tasks such as mailing and telefaxing correspondence, making routine calls to clients, obtaining pleadings from the court's database and printing documents as secretarial functions." Cormier v. ACAC Inc., 2013 WL 6499703, *5 (S.D. Ala. Dec. 11, 2013). See Johnson v. TMI Mgmt. Sys., Inc., 2012 WL 4435304, *5 (S.D. Ala. 2012) (finding "telephone call to client re: scheduling appointment," "receipt and download of order," and "review of the Court's Order…" non-compensable); Oden v. Vilsack, 2013 WL 4046456, *8 (S.D. Ala. 2013) (excessive time spent tracking down documents is not recoverable). See also Whitney Bank v. Davis–Jeffries–Hunold, Inc., 2012 WL 5470131, *7 (S.D. Ala. Nov. 9, 2012) (time spent by paralegals "receiving, reviewing, and indexing documents," "sending or receiving emails with documents attached," "preparing the civil cover sheet and summons," "receiving and indexing certified mail receipts," and "e-filing documents with the Court and receiving and indexing those documents" was not compensable time for the purposes of the fee petition). "Paralegal time may be recovered for work traditionally performed by an attorney." Id. "Otherwise, paralegal expenses are separately unrecoverable overhead expenses." Allen v. U.S. Steel Corp., 665 F.2d 689, 697 (11th Cir. 1982).

Here, the first three line items above that the Board objects to are "not entirely clerical work along the lines of photocopying, stamping, updating files, and binders, or labeling documents." Hithon v. Tyson Foods, Inc., 151 F.Supp.3d 1252, 1262 (N.D. Ala. 2015). In the absence of a paralegal, the document preparation Hattenstein performed would be performed by an attorney. Davis–Jeffries–Hunold, Inc., 2012 WL 5470131, *7. Therefore, the first three line items objected to above are recoverable.

However, travel to the courthouse to pick up juror questionnaires is clerical. This does not fall within the category of "work traditionally performed by an attorney;" it does not require legal

skill. Davis–Jeffries–Hunold, Inc., 2012 WL 5470131 at *7. The 1.75 hours billed are therefore not recoverable.

The Court has reviewed the remaining time entries by paralegal Hattenstein. (Doc. 75-7). A review of the billing records does not reveal excessive, redundant or unnecessary hours. The billing records support a finding of reasonable hours billed. Additionally, per the affidavit, Pilcher attested to the reasonableness of the hours billed. (Doc. 75-5 at 4). Thus, the Court finds reasonable the remaining **56.95 hours**[9] billed by Hattenstein.

## C.  <u>Calculating the Lodestar</u>

The Court has determined that Stevens is entitled to **$350 per hour** for the services performed by Pilcher. The Court has determined that Pilcher reasonably expended **384.7 hours** in this action. Accordingly, the lodestar for Pilcher is **$134,645.00**.

Additionally, the Court has determined that an **hourly rate of $75** is reasonable for the services performed by Hattenstein. The Court has found that Hattenstein reasonably expended **56.95 hours** in this action. Accordingly, the lodestar for Hattenstein is **$4,271.25**.

## D.  <u>Adjustments to the Lodestar</u>

The Court may adjust the lodestar based on the eighth <u>Johnson</u> factor— the amount involved and the results obtained. The Board argues for a 75% Lodestar adjustment "[b]ecause Stevens succeeded only partially and only on the lesser claim…" (Doc. 77 at 8). Stevens brought two claims against the Board—a Title VII claim alleging sex/pregnancy discrimination and an interference claim pursuant to the FMLA. The jury found in Stevens' favor on the FMLA claim but in favor of the Board for her Title VII claim. (Doc. 67-1). According to the Board, the Title VII claim "was clearly the major claim being advanced by Stevens. It carried the potential for a

---

[9] This amount reflects Hattenstein's total hours billed—58.7 hours—less the 1.75 hours of non-compensable, clerical tasks.

much higher jury verdict…" (Doc. 77 at 8). Moreover, the Board argues that because "the elements or proof between these two separate causes of action….were distinct and separate claims…the lodestar should be adjusted downward…" (Id.).

Stevens asserts "Plaintiff was able to obtain complete relief on the FMLA claim asserted and, although unsuccessful on the Title VII claim, it was a related claim and not discrete from the claims in which she prevailed." (Doc. 75-1 at 2). According to Stevens, "[t]he jury's rejection of Plaintiff's Title VII claims is not a sufficient reason for reducing attorney's fees herein." (Id. at 2-3). Stevens states, "Plaintiff was able to recover substantially all of the damages she asserted during trial." (Doc. 80 at 4). Moreover, Pilcher stated in her affidavit that:

> My fees asserted and work on claims for both Title VII and FMLA arose from the same operative facts and circumstances. As a result, the expenditure of my time was devoted generally to the litigation as a whole rather than on distinct legal theories asserted…[i.e. for] discovery issues related to pretext, customs and policies of the Defendant, depositions of Defendant's employees and administrators, policies and procedures of the Defendant, and the Defendant's affirmative defenses. As a result, it is difficult to divide the hours expended on a claim-by-claim basis… However, I have removed all work required in presenting Plaintiff's claims to the EEOC. It is my professional judgment that all of the time expended by me was necessary and reasonable.

(Doc. 75-5 at 3-4).

Stevens indicated that her counsel "made adjustments to the total hours incurred based on the dismissal of the Title VII claims and concerns addressed by…attorney for Defendant Mobile County Board of School Commissioners." (Doc. 75-1 at 6). She also responds that hours associated with just the Title VII claim have been excluded from the total of hours for which Stevens seeks fees. (Doc. 80 at 1).

The Board lists a number of witnesses who it claims were only related to the Title VII claim and as such the hourly entries associated with those individuals should be excluded. (Doc. 77 at 5). Stevens responds that each of the individuals were "relevant and essential to establishing that

18

Plaintiff was, in fact, an employee eligible to receive FMLA benefits…to establish her employment status" and to be able to respond to the Board's affirmative defenses. (Doc. 80 at 3).

There is a "strong presumption that the lodestar is the reasonable sum that the attorneys deserve." Bivins v. Wrap It Up. Inc., 548 F.3d 1348, 1350 (11th Cir. 2008). Nevertheless, "[t]he court may then adjust the lodestar to reach a more appropriate attorney's fee, based on a variety of factors, including the plaintiff's success in the suit" and the other factors discussed *supra*. Association of Disabled Americans v. Neptune Designs Inc., 469 F.3d 1357, 1359 (11th Cir. 2006) (citing Hensley, 461 U.S. at 435-36). "[T]he most critical factor is the degree of success obtained." Villano v. City of Boynton Beach, 254 F.3d 1302, 1305 (11th Cir. 2001) (citing Hensley, 461 U.S. at 436). Moreover, the Eleventh Circuit explained:

> If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive. Hensley, 461 U.S. at 436-37. In doing so, the court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion. Id. A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. Id. at 435. Where all theories derive from a common core of operative facts, the focus should be on the significance of the overall results as s function of total reasonable hours. Popham, 820 F.2d at 1578. It is improper to make the reduction based on a simple ratio of successful issues to issues raised. Hensley, 461 U.S. at 435 n. 11, Popham, 820 F.2d at 1579.

Norman, 836 F.2d at 1302.

"Where a plaintiff has obtained the result sought, courts should award full attorney's fees and are directed not to reduce fee awards to account for failed contentions raised in the lawsuit." Hensley, 461 U.S. at 435. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." Hensley, 461 U.S. at 435. Further, when plaintiff's claims for relief "involve a common core of facts or will be based on related legal theories, [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide

19

the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the District Court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id.

The Court finds that the two claims were related because they arose out of the same common core of operative facts. Moreover, though Stevens was unsuccessful on her Title VII claim, she received the majority of damages sought on the FMLA claim, albeit less than $8,000.00. The Court disagrees with the Board that only the deposition testimony of Gretchen Lang and George Smith were necessary for Stevens' FMLA claim. (Doc. 77 at 6). Each of the individuals the Board seeks to exclude provided information necessary for the jury to determine Stevens' employment status for FMLA eligibility. When looking at the result obtained as a whole, Stevens was partially successful even though the jury rejected Stevens' primary claim of pregnancy discrimination under Title VII. Accordingly, the Court finds that reducing the lodestar is by **25%** is appropriate.

Stevens also contends it would be appropriate to assess a 1.50 multiplier to the lodestar given the need for deterrence, risk of the action, and Stevens' success. (Doc. 75-1 at 7 ("Plaintiff further requests that the attorney's fee lodestar amount be enhanced by a 1.50 multiplier…")). The Court, however, cannot award an enhancement to an award of attorney's fees based on a case being taken on a contingency basis under federal fee-shifting statutes. Burlington v. Dague, 505 U.S. 557, 563 (1992). See e.g., Spakes v. Broward County Sherriff's Office, 2008 WL 11334933, *2 (S.D. Fla. 2008) ("In City of Burlington v. Dague, 505 U.S. 557 (1992) the Supreme Court rejected enhancements for calculated lodestar amounts in cases which involve federal fee-shifting statutes, such as the FMLA…"). The risk of a contingent fee representation is already considered when

calculating the lodestar. Id. To apply such a multiplier would amount to "double counting." Id. Thus, the Court declines to award an enhancement.

## E.    Costs

Stevens requests **$5,979.57** in costs pursuant to Federal Rules of Civil Procedure 54(d)(1) which provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party", and 29 U.S.C. § 1132(g)(1). (Doc. 75-1 at 7; Doc. 75-2, Bill of Costs).[10] Section 1132(g)(1) is the enforcement provision for the Employee Retirement Income Security Program. But, Section 2617(a)(2), the enforcement section of the FMLA, provides that "the court shall, in addition to any judgment awarded to plaintiff, allow…. other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3).

The Board does not contest that Stevens is entitled to costs. Instead, the Board objects to specific costs in Stevens' Bill of Costs. (Doc. 77 at 7). Stevens responds that the depositions were necessary to establish Stevens' employment status and necessary to respond to the Board's affirmative defenses. (Doc. 80 at 4).

"When determining what costs are reimbursable under the FMLA's cost-shifting provision, the Court is guided by the costs enumerated in 28 U.S.C. § 1920." Cheetham v. CSX Transportation, Inc., 2011 WL 13176217, *10 (M.D. Fla. 2011). "[A] court may only tax costs as authorized by statute." EEOC v. W & O, Inc., 213 F.3d 600, 620 (11th Cir. 2000). Thus, a district court may not award costs under Rule 54 "in excess of those permitted by Congress under 28 U.S.C. § 1920." Maris Distrib. Co. v. Anheuser-Busch, Inc., 302 F.3d 1207, 1225 (11th Cir. 2002)

---

[10] Stevens included the Bill of Cost as an exhibit to her motion. Typically, a Bill of Cost is submitted separately. Therefore, the Clerk has not reviewed the Bill of Costs as provided by S.D. Ala. Civ. L. R. 54 and Standing Order No. 13. However, since no documentation was attached to the Bill of Costs, the Clerk likely would not have taxed unsubstantiated costs.

(citing Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987)). Section 1920 specifies

which costs are recoverable, and provides as follows:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> > (1) Fees of the clerk and marshal;
> > (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> > (3) Fees and disbursements for printing and witnesses;
> > (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> > (5) Docket fees under section 1923 of this title;
> > (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

The party requesting costs bears the burden of providing sufficient detail of the costs so

that the court may determine when the expenses were incurred and whether the requesting party is

entitled to the costs. Loranger, 10 F.3d at 784. Failure to provide sufficient detail or "supporting

documentation verifying the costs incurred and the services rendered can be grounds for denial of

costs." Pelc v. Nowak, 2013 WL 3771233, *5 (M.D. Fla. 2013) (citing Johnson v. Mortham, 173

F.R.D. 313, 318 (N.D. Fla. 1997)).

Stevens was directed in the Bill of Costs to "[a]ttach to your bill an itemization and

documentation for requested costs in all categories." Stevens submitted an itemization of costs but,

no supporting documentation. (Doc. 75-2 at 1-4). Given the lack of information before the Court,

the Court is unable to verify the costs requested and is unable to determine whether Stevens is

entitled to the requested costs.[11] See Ford v. Navika Capital Group, LLC, 2017 WL 1381668, *11

(S.D. Ala. 2017) (declining to award costs where no supporting documentation was provided).

---

[11] For example, Stevens itemized $414.35 for the depositions of Clark and Rhodes. (Doc. 75-2 at 3). Since the Court does not have the invoice to document this itemization, the Court cannot ascertain whether any

The only cost the Court is able to independently verify without additional documentation is the $400 filing fee. (Doc. 75-2 at 1). See 28 U.S.C. § 1920(1) (allows "fees of the clerk" to be taxed as costs); Rubinstein v. Keshet Inter Vivos Trust, 2019 WL 8275157, *3 (S.D. Fla. 2019) (under Section 1920, prevailing party may recover filing of complaint cost); Morgan Stanley Smith Barney, LLC v. Wallace, 2018 WL 4208346, *2 (S.D. Ala. 2018) (same); Boyer v. Flagship Auto. Ctr., LLC, 2013 WL 2467778, *7 (M.D. Fla. Jun. 7, 2013) (Report & Recommendation) (("Plaintiff failed to attach any documents to the Bill of Costs. The only cost the Court can verify without additional documentation is the filing fee. Therefore ... the Court will tax the filing fee of $350.00 as costs, and not tax any of the other listed costs[ ]").

Additionally, Stevens has itemized certain expenses that typically are not recoverable under 28 U.S.C. § 1920, even with supporting documentation. For example, attorney travel time, costs of meals, and electronic research are not recoverable as a cost under the statute. Duckworth, 97 F.3d at 1399 (computerized legal research not compensable under § 1920); Mock v. Bell Helicopter Textron, Inc., 456 Fed. Appx. 799, 802 (11th Cir. 2012) (attorney travel expenses not recoverable under § 1920); Woods v. On Baldwin Pond, LLC, 2016 WL 7325546, *9 (M.D. Fla. Apr. 29, 2016) (costs of meals are not awardable).

Therefore, Stevens' motion for costs is **GRANTED** as to the **$400** filing fee only and **DENIED** as to all other listed costs.

## VI.   Conclusion

---

costs were included – such as extra copies, travel or mini-copies, shipping, etc., - that are not allowed under 28 U.S.C. § 1920(2) ("Fees for printed or electronically recorded transcripts necessarily obtained for use in the case"). Also, Stevens itemized $353.75 for costs of "Integrity Investigations Subpoenas Service". (Doc. 75-2 at 4). In federal court, the costs of service of a subpoena is limited to the cost charged by the U.S. Marshals Service, $65.00 per subpoena, plus allowable mileage. 28 U.S.C. § 1920(1); 28 U.S.C. § 1921; 28 C.F.R. § 0.114(a)(3). Since there is no invoice to document this itemization, the Court cannot ascertain how many subpoenas were served and whether the fee exceeded the statutorily allowed amount.

Accordingly, it is **ORDERED** that Stevens' motion for attorney's fees and costs (Doc. 75) is **GRANTED in part** and **DENIED in part.** The Court awards **$100,983.75** in attorney fees, **$3,203.44** in paralegal fees, and **$400.00** in costs.

DONE and **ORDERED** this the **20th** day of **April 2020.**

/s/Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT**